**CLEAR CHANNEL COMMUNICA-TIONS, INC. and CC Media Holdings, Inc., Plaintiffs**

v.

**CITIGROUP GLOBAL MARKETS, INC., Citicorp USA, Inc., Citicorp North America, Inc., Morgan Stanley Senior Funding, Inc., Credit Suisse Securities USA, LLC, RBS Securities Corporation, Wachovia Investment Holdings, LLC, Wachovia Capital Markets, LLC and Deutsche Bank Securities, Inc., Defendants.**

**Civil Action No. SA–08–CA–251–OG.**

United States District Court, W.D. Texas, San Antonio Division.

April 2, 2008.

Joseph D. Jamail, Jamail & Kolius, Jacks C. Nickens, Clements, O'Neill Pierce and Nickens, Jeremy L. Doyle, Kathy Dawn Patrick, Laura J. Kissel, Robin C. Gibbs, Gibbs & Bruns, L.L.P., Thomas M. Farrell, Mayor, Day, Caldwell & Keeton, L.L.P., Houston, TX, Ricardo G. Cedillo, Davis, Cedillo & Mendoza, San Antonio, TX, for Plaintiffs.

Brian S. Weinstein, James I. McClammy, Lawrence Portnoy, Michael P. Carroll, Davis Polk & Wardwell, New York, NY, Lamont Alan Jefferson, Haynes & Boone, L.L.P., S. Mark Murray, Law Offices of S. Mark Murray, San Antonio, TX, for Defendants.

### ORDER

ORLANDO L. GARCIA, District Judge.

Pending before the Court is Plaintiffs' Amended Emergency Motion for Remand and Request for Expedited Ruling (Dkt.# 11). Given the present circumstances of this case, the Court has considered the motion on a expedited basis. After reviewing the motion, response, and the pleadings presented to the Court, in light of the applicable law. the Court finds that Plaintiffs' motion should be granted and this case should be remanded to the 225th Judicial District Court of Bexar County, Texas.

### Statement of the case

This commercial tort action arises from a dispute regarding the debt funding commitment of an anticipated merger that would ultimately privatize Clear Channel Communications, Inc. ("Clear Channel"). If the merger is consummated, Plaintiff CC Media Holdings, Inc. ("CC Media") will be the owner of Clear Channel. Plaintiffs, Clear Channel and CC Media, have sued Defendants for tortious interference with their Merger Agreement. Plaintiffs assert that Defendants signed a commitment letter and agreed to provide debt funding for the purchase of Clear Channel. Plaintiffs further allege that Defendants are now trying to renege on their commitment and are engaging in various wrongful acts that constitute tortious interference with the Merger Agreement. Plaintiffs claim that all conditions in the commitment letter have been met, but the merger will fail and they will suffer tremendous damages if Defendants are not forced. to cease their alleged interference and provide funding for the merger. Defendants have not filed an answer to the allegations in the petition.

### Procedural history of the case

This lawsuit was filed in the 225th Judicial District Court of Bexar County, Texas on March 26, 2008 at 4:54 p.m. At approximately 8:44 p.m. that evening, the state district judge signed a temporary restraining order instructing Defendants to preserve all records and available funds and refrain from taking any action that would interfere with or thwart consummation of the Merger Agreement. The TRO also set a hearing date of April 8, 2008 for Plaintiffs' request for temporary injunction.

On the same day, another lawsuit was filed in New York County, the State of New York. The New York lawsuit involves the same subject matter, but not all of the same parties, and the plaintiffs therein have alleged different causes of action: breach of contract, fraud, deceptive trade practices and civil conspiracy.

Defendants have not yet been served with summons or a copy of the complaint, but they learned of the lawsuit and obtained a copy of the complaint after it was filed. On March 27, 2008, Defendants filed their Notice of Removal, asserting diversity jurisdiction. On Friday, March 28, 2008, Plaintiffs filed their Emergency Motion for Remand and Request for Expedited Ruling, as amended. The Court found that expedited handling was appropriate, and requested that Defendants file their response on Monday, March 31, 2008. Defendants filed their response, as directed. (Dkt.# 24). Plaintiffs then filed a reply (Dkt.# 25) and Defendants filed a surreply (Dkt.# 26). Plaintiffs also filed a supporting advisory (Dkt.# 27), and Defendants filed a brief response to the advisory. (Dkt.# 29).

*Whether diversity jurisdiction exists*

 "It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978); *Oliver v. Trunkline Gas Co.,* 789 F.2d 341, 343 (5th Cir.1986). As such, the limits on federal court jurisdiction must be "neither disregarded nor evaded," but must be strictly construed with any doubt being resolved against a finding of jurisdiction. *Owen,* at 374, 98 S.Ct. 2396. Because there is no federal question involved in this lawsuit, the Court has jurisdiction to hear this matter only if complete diversity between the parties exists. *See* 28 U.S.C. § 1332. A corporation is deemed to be a citizen of any State in which it is incorporated and its principal place of business is located. 28 U.S.C. § 1332(c)(1). Because Plaintiff CC Media is a Delaware corporation, and several Defendants are also citizens of Delaware, complete diversity does *not* exist.

 Despite the lack of diversity of citizenship, Defendants assert that the Court can exercise jurisdiction over this matter because CC Media was fraudulently joined as a party plaintiff solely for the purpose of defeating diversity jurisdiction. It is well established that the removing party has the burden to establish federal subject matter jurisdiction. *Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1335 (5th Cir.1995). The burden to prove fraudulent joinder is a heavy one, and all "uncertainties" are resolved in favor of the non-removing party. *Cavallini v. State Farm Mutual Auto Insurance Co.,* 44 F.3d 256, 259 (5th Cir.1995). The removing party must prove that "there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the [defendants] in state court, or that there has been outright fraud in the plaintiff's pleading of jurisdictional facts." *Id.* (quoting *Green v. Amerada Hess Corp.,* 707 F.2d 201, 205–06 (5th Cir.1983)). In determining whether there is any possibility of recovery against the nondiverse party, the Court must evaluate the factual allegations in the plaintiff's pleadings in the light most favorable to the plaintiff, and resolve all contested issues of fact and ambiguities in the controlling state law in favor of the plaintiff. *Cavallini,* 44 F.3d at 259. The "possibility" of recovery must reasonable, and not merely theoretical. *Travis v. Irby,* 326 F.3d 644, 648 (5th Cir.2003).

 Typically, the fraudulent joinder argument arises when a non-diverse defendant has been joined in a lawsuit. In this case, however, Defendants claim that a *non-diverse plaintiff,* CC Media, has been fraudulently joined in the lawsuit. The cases in the Fifth Circuit involving fraudulent joinder of a non-diverse plaintiff are sparse and do not provide the best guidance. *See e.g., In re Benjamin Moore & Co.,* 318 F.3d 626, 630–31 (5th Cir.2002)(assuming, without deciding, that fraudulent joinder of plaintiffs is a viable theory).[1] Nevertheless, other courts have treaded these waters, and the Court has found no controlling case law that would preclude it from doing so here. *See Nelson v. St. Paul Fire and Marine Ins. Co.,* 897 F.Supp. 328, 331 (S.D.Tex.1995)(applied fraudulent joinder doctrine to non-diverse plaintiff); *see also Elk Corp. of Texas v. Valmet Sandy–Hill,* 2000 WL 303637 *2–3 (N.D.Tex.2000)(not published)(found that doctrine may be applied when a defendant

---

1. As Plaintiffs note, the removal statute refers only to properly joined "defendants." 28 U.S.C. § 1441(b). If the doctrine of fraudulent joinder could *not* be applied to a nondiverse plaintiff, the Court's inquiry would end and remand would be automatic because Defendants concede that diversity jurisdiction exists only if CC Media is found to have been fraudulently joined.

claims that a plaintiff has been fraudulently joined). In applying the fraudulent joinder analysis to a non-diverse plaintiff, however, the focus of the analysis is not whether there is any possibility of recovery against one particular defendant, but whether CC Media has a reasonable possibility of recovering at all. *See Nelson,* 897 F.Supp. at 331. If there is a reasonable possibility of recovery under the cause of action alleged, CC Media has not been fraudulently joined as a party plaintiff.

■ As noted above, the sole cause of action alleged by CC Media is tortious interference with a contract. The elements of a tortious interference claim are: (1) existence of a contract subject to interference; (2) the occurrence of an act of interference that was willful and intentional; (3) proximate cause; and (4) damages. *Prudential Ins. Co. of America v. Financial Review Services, Inc.,* 29 S.W.3d 74, 77 (Tex.2000); *Holloway v. Skinner,* 898 S.W.2d 793, 795–96 (Tex.1995). In the Plaintiffs' verified petition, they identify CC Media Holdings, Inc. as a party to the Merger Agreement. Pursuant to the Merger Agreement, CC Media will become the owner of Clear Channel. Plaintiffs state that Defendants, by signing their commitment letter, agreed to provide debt funding for the purchase of Clear Channel. Plaintiffs state that Defendant knew the market risks and clearly understood that the consummation of the merger was dependent on the fulfillment of their obligation to fund the loans. Plaintiffs allege that Defendants have tortiously interfered with the Merger Agreement by engaging in various wrongful acts, including: (1) threatening to pull out of another wholly unrelated transaction involving the purchasers unless there was an agreement to change the terms of Defendants' commitment in the Clear Channel transaction; (2) unilaterally and purposefully changing their commitments in the draft financing documents; (3) refusing to execute documents in an overt effort to "run out the clock;" and (4) fabricating false reasons for refusing to proceed with the transaction. Plaintiffs allege that all of these acts are intended to destroy the merger transaction, which will cause CC Media to lose in excess of 26 billion dollars. In viewing these allegations in the light most favorable to the non-removing party, the Court *cannot* say that Plaintiff CC Media has *no reasonable possibility* of recovery or that it has failed to plead a colorable claim. Clearly. CC Media has pled sufficient factual allegations to overcome any claim of fraudulent joinder.

Rather than analyzing whether CC Media has colorable claim for tortious interference under Texas law, Defendants argue that CC Media cannot assert any claim *in Texas* because it is an "affiliate" or "shell corporation" of the parties to the commitment letter, which contains a forum selection clause requiring the parties to litigate their disputes in New York. In reply, Plaintiffs note that Defendants do *not* argue that CC Media has no claim or reasonable possibility of recovery, but only that it has no possibility of recovery *in Texas* because its "affiliates" or others "in control" of CC Media agreed to litigate disputes arising from the commitment letter in New York. Plaintiffs further contend that CC Media is not a mere "shell corporation" and because neither plaintiff in this action was a party to the commitment letter, they should not be bound by the terms thereof.[2] (*See* Second Amended and Restated Commitment Letter, Dkt. # 24, Exh. C). Plaintiffs also assert that the

**2.** Plaintiffs further argue that Defendant "[knew] the structure of the Merger [and] specifically contemplated that CC Media

Holdings would not be a party to the Commitment Letter ...". (Dkt.# 27).

Merger Agreement is the only agreement to which they *were* parties, and that agreement contains a forum selection clause which requires that disputes be litigated in Texas.

Defendants have raised several issues relating to the forum selection clause which they claim preclude the possibility of recovery by CC Media *in a Texas court.* These issues include whether CC Media should be considered an "affiliate" of the parties to the commitment letter; and, whether CC Media should be legally bound by the terms of the commitment letter even though it was not a party thereto. However, these issues do not conclusively show that Plaintiffs' claim is barred or invalid on its face, as Defendants claim.[3] At most, they raise "uncertainties" and the Court must resolve all uncertainties in favor of the non-removing party. *Cavallini,* 44 F.3d at 259. The Court would be pretrying the case if it tried to resolve these issues at this stage of the litigation, and the Fifth Circuit has cautioned against this temptation when determining whether subject matter jurisdiction exists. *Carriere v. Sears, Roebuck & Co.,* 893 F.2d 98, 100 (5th Cir.1990).[4] Again, the question is not whether CC Media *will* actually prevail in prosecuting its claim. The only question is whether it has *any reasonable possibility* of prevailing under the facts alleged. The Court finds that such possibility exists. Defendants have not met their heavy burden of showing that CC Media Moldings, Inc. was fraudulently joined as a plaintiff in this action. Complete diversity of citizenship between the parties does not exist. Therefore, subject

matter jurisdiction does not exist under 28 U.S.C. § 1332 and the Court does not have the authority to hear this matter under Article III of the United States Constitution.

It is therefore ORDERED that Plaintiffs' Amended Motion to Remand (Dkt.# 11) is GRANTED, and this case is REMANDED to the 225th Judicial District Court of Bexar County, Texas pursuant to 28 U.S.C. § 1447(c). The Clerk of the Court shall immediately send a certified copy of this remand order to the clerk of the State court. The State court may then proceed accordingly. This order is not appealable. *See* 28 U.S.C. § 1447(d).

---

**3.** Defendants compare this case with those involving statutes of limitation, in which the time that the cause of action accrued is generally discernable from the pleadings themselves. This case is not comparable.

**4.** Because CC Media is not a party to the commitment letter, this Court would be forced to not only pierce the pleadings, but also pierce the agreement to determine whether a non-party, CC Media, should be bound by the agreement under New York law. The Court is not armed for that task, based on the limited record before it.